BOARD OF EDUCATION OF JEFFERSON COUNTY SCHOOL DISTRICT NO. 8 AND JEFFERSON COUNTY SCHOOL DISTRICT NO. 8, APPELLEES AND CROSS-APPELLEES, V. BOARD OF EDUCATION OF YORK COUNTY SCHOOL DISTRICT NO. 12 AND YORK COUNTY SCHOOL DISTRICT NO. 12, APPELLEES AND CROSS-APPELLANTS, AND NEBRASKA STATE BOARD OF EDUCATION AND DOUGLAS D. CHRISTENSEN, COMMISSIONER OF EDUCATION, NEBRASKA DEPARTMENT OF EDUCATION, STATE OF NEBRASKA, APPELLANTS.

703 N.W.2d 257

Filed September 16, 2005.   No. S-03-1190.

Jon Bruning, Attorney General, and Leslie S. Donley for appellants.

Kent E. Rauert, of Svehla, Barrows, Thomas & Rauert, P.C., for appellees Board of Education of York County School District No. 12 and York County School District No. 12.

Susan Kubert Sapp, of Cline, Williams, Wright, Johnson & Oldfather, P.C., for appellees Board of Education of Jefferson County School District No. 8 and Jefferson County School District No. 8.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Nebraska law requires the board of education of every school district to provide or contract for special education programs and transportation for all resident children with disabilities who would benefit from such programs. Neb. Rev. Stat. § 79-1127 (Reissue 2003). The issue in this case is whether C.G., a student with disabilities who receives special education and related services, is a resident of Jefferson County School District No. 8 or York County School District No. 12.

## FACTUAL BACKGROUND

C.G. was born on February 2, 1983. Prior to July 14, 1998, C.G. lived with his grandparents, who were his legal guardians, in Fairbury, Nebraska, and attended school there. In the early summer of 1998, C.G. exhibited behavior that was intolerable to his grandparents. As a result of that behavior, C.G.'s grandparents requested assistance from the Nebraska Department of Health and Human Services developmental disabilities system (DHHS). DHHS recommended placing C.G. in a Region V group home in Hebron, Nebraska. C.G.'s grandparents accepted the recommendation. On July 14, 1998, C.G. was placed at the group home in Hebron.

On September 9, 1998, C.G. was moved from Hebron to another Region V group home in York, Nebraska, once again on the recommendation of DHHS and acceptance by his grandparents. Since that date, C.G. has moved to other Region V group homes, but all have been within the boundaries of York School District No. 12. C.G.'s initial and continued placement in Region V group homes has been for noneducational reasons.

C.G. began attending school in York in September 1998. On December 10, 1998, the board of education of York County School District No. 12 and its school district (hereinafter collectively York) filed a "Report of Resident Children With Verified Disabilities, December 1, 1998" with the Nebraska Department of Education. In the report, York identified C.G. as a special education student and identified C.G.'s "Resident County-District" on the report as "York Public Schools." A year later, on December 8, 1999, York filed with the Nebraska Department of Education a "SESIS [Special Education Student Information System] Child Count as of Tuesday, November 30, 1999." York identified C.G. as one of its students in this report.

On March 25, 1999, C.G. became a ward of the State of Nebraska as a result of two separate adjudications in the York County Court sitting as a juvenile court. His status as a state ward continued until August 1, 2000, when the juvenile court terminated its jurisdiction over him. Thereafter, C.G. continued to reside in Region V group homes and to attend school in York. C.G.'s grandparents have consistently expressed their intention not to allow him to return to their home in Fairbury.

## PROCEDURAL BACKGROUND

On July 11, 2002, the board of education of Jefferson County School District No. 8 and its school district (hereinafter collectively Fairbury) filed a petition for a declaratory order with the State Board of Education pursuant to Neb. Rev. Stat. § 84-912.01 (Reissue 1999) and 92 Neb. Admin. Code, ch. 62 (1995). Fairbury sought a declaratory order stating that § 79-1127 did "not require Fairbury . . . to provide a special education to [C.G.] by contracting with York . . . pursuant to Neb. Rev. Stat. §79-215 (2001 Supp.) for the 2002-2003 school year because Fairbury . . . is not [C.G.'s] resident school district under Neb. Rev. Stat.

§79-215." York consented to the use of a declaratory order proceeding to determine Fairbury's petition. See 92 Neb. Admin. Code, ch. 62, § 003.08.

On July 12, 2002, the Commissioner of Education delegated Fairbury's petition to a hearing officer, who was to consider the petition and recommend a decision to the Board. See 92 Neb. Admin. Code, ch. 62, §§ 005.01 and 005.01A through 005.01D. On that same day, York filed an answer to Fairbury's petition. York admitted in part and denied in part Fairbury's factual allegations and requested a declaratory order stating that C.G. is a resident of Fairbury for purposes of providing special education to C.G. for the 2002-03 school year. Fairbury filed a reply to York's answer on or about July 24.

On July 31, 2002, the hearing officer issued his findings of fact, conclusions of law, and recommendations to the State Board of Education. He recommended that the board issue a declaratory order finding that C.G. is a resident of Fairbury and that therefore, Fairbury is required to contract with York to provide special education services to C.G. for the 2002-03 school year.

On August 7, 2002, Fairbury requested a reconsideration of the hearing officer's findings of fact, conclusions of law, and recommendations. In response, the State Board of Education requested the parties submit additional arguments in light of the fact that C.G. had reached the age of majority on February 2, 2002. On September 3, the hearing officer issued an additional recommendation. The hearing officer found that C.G.'s adult status was immaterial to the issue presented and again recommended that the board issue a declaratory order concluding that Fairbury was required to contract with York to provide special education services to C.G. for the 2002-03 school year. The State Board of Education and the Commissioner of Education (hereinafter collectively the Board) entered a declaratory order on September 6, adopting the hearing officer's findings of fact, conclusions of law, and recommendations. Under the Administrative Procedure Act, Fairbury filed a petition for review in the district court on October 4.

On September 19, 2003, the district court reversed the order of the Board. The court determined that Neb. Rev. Stat. § 79-215(7)

(Supp. 2001), rather than § 79-215(8), was applicable and concluded that C.G. was a resident of York.

## ASSIGNMENTS OF ERROR

The Board appealed, and York cross-appealed. See Neb. Ct. R. of Prac. 1C and 1E (rev. 2003). Their assignments of error are the same: The district court erred in (1) determining that C.G. was a resident of York rather than Fairbury, (2) applying § 79-215(7) to determine C.G.'s residency rather than § 79-215(8), and (3) finding that York's listing of C.G. as a resident student on reports required by the Nebraska Department of Education was evidence that C.G. was a resident of York.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Lein v. Nesbitt*, 269 Neb. 109, 690 N.W.2d 799 (2005). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. *Id.* Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Id.* An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id.*

## ANALYSIS

Section 79-1127 provides that "[t]he board of education of every school district shall provide or contract for special education programs and transportation for all *resident* children with disabilities who would benefit from such programs." (Emphasis supplied.) Whether Fairbury or York is obligated to provide or contract for C.G.'s 2002-03 education depends on whether C.G. was a resident of Fairbury or York during that school year.

The answer to that question lies within § 79-215, which provides in relevant part:

(1) Except as otherwise provided in this section, a student is a resident of the school district where he or she resides or any school district where at least one of his or her parents reside and shall be admitted to any such school district upon request without charge.

. . . .

(7) When a student as a ward of the state or as a ward of any court (a) has been placed in a school district other than the district in which he or she resided at the time he or she became a ward . . . *the student shall remain a resident of the district in which he or she resided at the time he or she became a ward.*

(8) When a student is not a ward of the state or a ward of any court and is residing in a residential setting located in Nebraska for reasons other than to receive an education . . . *the student shall remain a resident of the district in which he or she resided immediately prior to residing in such residential setting.* . . . The resident district for a student who is not a ward of the state or a ward of any court does not change when the student moves from one residential setting to another.

(Emphasis supplied.)

The Board and York argue that § 79-215(8) applies because during the timeframe at issue, the 2002-03 school year, C.G. was not a state ward. Applying § 79-215(8), the Board and York conclude that C.G. was a resident of Fairbury because prior to being placed in Region V group homes in Hebron and York, C.G. resided in Fairbury with his grandparents. They further argue that § 79-215(7) cannot apply for two reasons: because C.G. was not a state ward during the 2002-03 school year and also because C.G. was never "placed in a school district *other than* the district in which he or she resided at the time he or she became a ward." (Emphasis supplied.) See *id.*

Fairbury argues that § 79-215(7) is the applicable provision in this case and establishes York as C.G.'s residency. Fairbury argues that it is applicable, rather than § 79-215(8), because

C.G. was a state ward at the time § 79-215 was enacted by the Legislature in 2000. Thus, Fairbury concludes that C.G. remained a resident of York because that is where he resided when he became a ward. Fairbury argues that § 79-215(8) cannot apply because C.G. has reached the age of majority. Citing the second sentence of § 79-215(8) that begins "Upon request by *a parent or legal guardian*," Fairbury interprets § 79-215(8) as applying only to minor students. (Emphasis supplied.) Brief for appellee Fairbury at 35.

We agree with York's position. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning. An appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *24th & Dodge Ltd. Part. v. Acceptance Ins. Co.*, 269 Neb. 31, 690 N.W.2d 769 (2005). Section 79-215(7) plainly applies only to wards of the state or court. It is undisputed that C.G. was not a state ward at any time during the 2002-03 school year, the only year for which Fairbury sought a determination of its obligation to provide for C.G.'s education. Meanwhile, the plain language of § 79-215(8) applies in all respects. C.G. was not a ward of the state or any court during the 2002-03 school year, and he was residing in the described residential setting in Nebraska for reasons other than to receive an education. Fairbury's view that § 79-215(8) can apply only to minor students is unfounded. It is clear that some individuals may reach the age of majority, yet still remain a "student" entitled to a free education in Nebraska. See, Neb. Const. art. VII, § 1 ("[t]he Legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years"); Neb. Rev. Stat. § 43-245(1) (Cum. Supp. 2002) (for purposes of Nebraska Juvenile Code, age of majority means nineteen years of age). Furthermore, the permissive language of § 79-215(8), "request by a parent or legal guardian," describes only a process for the contracting of a student's education. It does not affect a student's residency determination and therefore does not narrow the scope of the section to minor students only.

Fairbury also argues that York's inclusion of C.G. on two reports it filed with the Nebraska Department of Education in 1998 and 1999 serves as an admission that C.G. was a resident of

York. We disagree. Such reports may be relevant to determine C.G.'s residency during those years, but the only year at issue in Fairbury's petition for declaratory order is the 2002-03 school year. There is no such evidence in our record indicating York claimed C.G. as a resident student during that year. In addition, Fairbury alleged in its petition for a declaratory order that York received an increased amount of special education reimbursement funds by listing C.G. as one of its students in the 1998 report. However, York denied that allegation, and neither the hearing officer nor the Board ever made a finding of fact on that issue.

## CONCLUSION

We conclude that, pursuant to § 79-1127, Fairbury is responsible for providing or contracting for the education of C.G. because C.G. is a resident of Fairbury under § 79-215(8). Therefore, we reverse the order of the district court.

REVERSED.

WRIGHT, J., not participating.