TYSON FRESH MEATS, INC., SUCCESSOR TO IBP, INC., APPELLANT AND CROSS-APPELLEE, V. STATE OF NEBRASKA, NEBRASKA DEPARTMENT OF REVENUE, AND MARY JANE EGR, NEBRASKA STATE TAX COMMISSIONER, APPELLEES AND CROSS-APPELLANTS.

704 N.W.2d 788

Filed October 21, 2005.   No. S-04-1294.

John M. Boehm, of Butler, Galter, O'Brien & Boehm, and Quentin "Doug" Sigel, of Scott, Douglass & McConnico, L.L.P., for appellant.

Jon Bruning, Attorney General, and L. Jay Bartel for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Following an audit by the Nebraska Department of Revenue (Department), a deficiency determination, including unpaid tax, interest, and a penalty, was issued against Tyson Fresh Meats, Inc., successor to IBP, inc. (IBP). IBP filed a petition for redetermination, arguing that the assessment of interest and the penalty were improper. After a hearing, the State Tax Commissioner (Commissioner) affirmed the assessment of interest, but waived the penalty. IBP appealed to the district court, which affirmed the order on grounds other than those asserted by the Commissioner. IBP appeals, and the Department and Commissioner (collectively State) cross-appeal.

## FACTUAL BACKGROUND

The parties stipulated to the following facts: On May 31, 2000, following an audit by the Department, the Department issued a "Notice of Deficiency Determination" against IBP which totaled $1,409,177. The deficiency consisted of $916,266 in unpaid use tax, $401,284 in interest, and $91,627 in penalty. The time period covered by the audit was from September 1, 1993, to August 31, 1996. On June 26, 2000, IBP filed a "Petition for Redetermination of the Notice of Deficiency Determination," along with a check for $1,035,778 in payment of the unpaid tax and a portion of the accrued interest. In addition to the petition and check, IBP filed an "Application for Abatement of Penalty." For purposes of its petition and this appeal, IBP does not challenge the assessment of the unpaid use tax.

The parties also stipulated that prior to the audit period at issue, the parties entered into an agreement under the Employment and Investment Growth Act, commonly referred to as "L.B. 775." In that agreement, the Department agreed to refund sales and use taxes paid on the purchase of qualifying assets and improvements to real property in return for IBP's meeting of certain requirements. The parties also agreed that of the $916,266 in use tax assessed, $670,279.84 was refunded under L.B. 775. The parties further stipulated that of the $401,284 in interest originally assessed during the audit, the portion attributable to the amount of tax refunded was $293,552.94.

Finally, the parties stipulated to the issues presented at the Department's hearing. Specifically, the issues were limited to (1) "[w]hether interest should accrue on a portion of consumer's use tax where the tax attributable to that portion of the assessment was refundable under the Employment and Investment Growth Act" and (2) "[w]hether a penalty should be imposed on the Petitioner under these circumstances."

Following a hearing, the Commissioner affirmed the deficiency determination with respect to the imposition of interest in the amount of $293,552.94, concluding that pursuant to Neb. Rev. Stat. § 77-2711(11) (Reissue 2003), the Department lacked authority to abate interest. The Commissioner, however, waived

the penalty, concluding that the Department had the authority to do so and noting that IBP's record would support such a waiver.

Pursuant to the Administrative Procedure Act, IBP appealed to the district court with respect to the assessment of interest. The district court affirmed the order on different grounds, specifically finding that the Commissioner had the discretion to reduce or eliminate interest, and further, that the Commissioner had not erred in the exercise of that discretion.

## ASSIGNMENTS OF ERROR

IBP argues, restated, that the district court erred in (1) finding that IBP owed interest on portions of use tax which were ultimately refunded, (2) finding that the Department had exercised discretion in its assessment of interest, (3) failing to remand with instructions for the Department to reconsider the assessment of interest given its discretion, and (4) failing to remand for a determination of the nature of an audit compromise agreement between IBP and the Department.

On cross-appeal, the State argues that the district court erred in finding it had discretion to reduce or eliminate interest owed by IBP. The State does not contest the waiver of penalty.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Jefferson Cty. Bd. of Ed. v. York Cty. Bd. of Ed., ante* p. 407, 703 N.W.2d 257 (2005). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* In an appeal under the Administrative Procedure Act, an appellate court will not substitute its factual findings for those of the district court where competent evidence supports the district court's findings. *Caspers Constr. Co. v. Nebraska State Patrol, ante* p. 205, 700 N.W.2d 587 (2005).

The interpretation of statutes and regulations presents questions of law, in connection with which an appellate court

has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Central States Tire Recycling of Neb. v. State*, 268 Neb. 712, 687 N.W.2d 681 (2004).

## ANALYSIS

IBP's principal argument on appeal is that it was improper for interest to be assessed on the use tax at issue because the tax was ultimately paid by IBP and later refunded under L.B. 775. A brief review of the relevant provisions of the Nebraska Revenue Act of 1967 is helpful. We note that the applicable tax statutes have been amended without substantive change since the time period covered by the audit; thus, we will cite to the current versions. See *Lackawanna Leather Co. v. Nebraska Dept. of Rev.*, 259 Neb. 100, 608 N.W.2d 177 (2000).

Neb. Rev. Stat. § 77-2708(1)(a) (Reissue 2003) provides that "use taxes imposed by the Nebraska Revenue Act of 1967 shall be due and payable to the Tax Commissioner monthly on or before the twenty-fifth day of the month next succeeding each monthly period." See, also, § 77-2708(1)(b)(i) ("[o]n or before the twenty-fifth day of the month . . . a return . . . along with all taxes due, shall be filed with the Tax Commissioner").

Neb. Rev. Stat. § 77-2709(1) (Reissue 2003) provides that

[i]f the Tax Commissioner is not satisfied with the return or returns of the tax or the amount of tax required to be paid to the state by any person, he or she may compute and determine the amount required to be paid upon the basis of the facts contained in the return or returns or upon the basis of any information within his or her possession or which may come into his or her possession. One or more deficiency determinations of the amount due for one or more than one period may be made. . . . In making a determination, the Tax Commissioner may offset overpayments for a period or periods, together with interest on the overpayments, against underpayments for other period or periods, against penalties, and against the interest on the underpayments.

Moreover, § 77-2709(3) provides that "[t]he amount of the determination of any deficiency exclusive of penalties shall bear interest . . . ."

Incentives available under L.B. 775 relevant in this case include, inter alia, refunds of use taxes paid under the Nebraska Revenue Act of 1967. See Neb. Rev. Stat. § 77-4105(3)(a) and (b) (Reissue 2003). Neb. Rev. Stat. § 77-4106(2)(d) (Reissue 2003) provides in part that "[a]ll refund claims shall be filed, processed, and allowed as any other claim under section 77-2708, except that the amounts allowed to be refunded under [L.B. 775] shall be deemed to be overpayments and shall be refunded notwithstanding any limitation in subdivision (2)(a) of section 77-2708."

IBP's contention that interest is not owed on refunded tax is based upon the "overpayments" language of § 77-4106(2)(d), particularly the portion of that statute which provides that "the amounts allowed to be refunded under [L.B. 775] shall be deemed to be overpayments." In its brief, IBP argues that

> [t]his "overpayments" language is critical. The LB 775 refunds are by virtue of this language deemed to be overpayments. As overpayments, the refunded amounts are offset against any initial underpayment of the amounts refunded under LB 775. Why? Neb. Rev. Stat. § 77-2708(2)(a) (2003) plainly states: "If the Tax Commissioner determines that any sales or use tax amount . . . has been erroneously or illegally collected or computed . . . , the Tax Commissioner *shall* set forth that fact in his or her records and the excess amount collected or paid may be credited on any sales, use, or income tax amounts then due and payable from the person under the Nebraska Revenue Act of 1967 (emphasis added)." Neb. Rev. Stat. § 77-2708(2)(g) also states: "Upon the allowance of a credit or refund . . . of any sum which was excessive . . . interest *shall* be allowed and paid on the amount of such credit or refund at the rate specified in Section 45-104.02 . . . (emphasis added)."
>
> Section 77-2708(2)(a) and (g) both provide that where tax amounts are overpaid, the overpayment is offset against underpayments. The net effect of this offset is that no interest is due on refunded taxes. The overpayments are offset against underpayments.

Brief for appellant at 8.

We conclude that IBP's argument is without merit. The State argues, and we agree, that with respect to the statutory framework set forth in §§ 77-2708 and 77-2709, there can be no "overpayment" to offset against an "underpayment" unless payment was made when due. Though the use tax in this case was eventually paid, that is not the relevant inquiry. The pertinent question is when the tax was paid, and in this case, it is undisputed that the tax was not paid when due.

An audit of IBP revealed that IBP had failed to pay the use tax owed pursuant to § 77-2708(1)(a) and (b)(i). Given IBP's non-payment, the Department issued a deficiency determination against IBP pursuant to § 77-2709(1) in the amount of the unpaid tax. A plain reading of § 77-2709(3) required that the amount of this deficiency determination "shall bear interest." Thus, at the time the interest at issue was assessed, IBP had not paid the use tax it owed, and the Department was required to assess interest on that unpaid amount.

Furthermore, the subsections to which IBP directs us in support of its "overpayments" premise are inapplicable. According to the terms of § 77-2708(2)(a), that subsection applies "[i]f the Tax Commissioner determines that any sales or use tax amount, penalty, or interest has been paid more than once, has been erroneously or illegally collected or computed, or has been paid and the purchaser qualifies for a refund under section 77-2708.01." In IBP's case, IBP failed to pay the use tax owed when due. The tax was eventually paid and refunded, but it was not paid more than once and there was no error or illegality in the collection or computation of the tax, nor was IBP's refund issued pursuant to Neb. Rev. Stat. § 77-2708.01 (Reissue 2003), which deals with refunds made for certain agricultural equipment. In fact, the record contains a waiver by IBP wherein it acknowledges that the calculation of use tax in the deficiency determination was "accurate."

Likewise, § 77-2708(2)(g) is clearly inapplicable in this situation. That section provides that "[u]pon the allowance of a credit or refund of any sum erroneously or illegally assessed or collected, of any penalty collected without authority, or of any sum which was excessive or in any manner wrongfully collected,

interest shall be allowed . . . ." IBP claims that this subsection is relevant to this inquiry because it deals with the allowance of a refund "of any sum which was excessive" and that its L.B. 775 refund was an overpayment and thus excessive. Again, we disagree. The amount of use tax ultimately refunded to IBP was not excessive; in fact, as noted above, IBP expressly agreed that the amount of the use tax assessed and later paid was accurate and, thus, was exactly the amount owed by IBP. Finally, the refund in question was not made pursuant to any of the other circumstances set forth in this subsection, as it was not "erroneously or illegally assessed or collected," a "penalty collected without authority," or "in any manner wrongfully collected."

In its reply brief, IBP, for the first time, cites to § 77-2709(1) as additional support of its argument. Specifically, IBP relies on the portion of § 77-2709(1) which provides that "the Tax Commissioner may offset overpayments . . . against underpayments." IBP's reliance on that subsection is also misplaced. As noted previously, we have already concluded with respect to IBP's argument under § 77-4106(2)(d) that there can be no "overpayment" if payment was not made when due. The same reasoning applies to IBP's argument under § 77-2709(1). As a result, the "overpayments" language upon which IBP relies is not applicable. The district court did not err in its determination that IBP owed interest. IBP's first assignment of error is without merit.

In its second and third assignments of error, IBP argues that the district court erred in its determination that the Department properly exercised its discretion in upholding the interest assessment. IBP contends that "[t]here is simply no factual basis for the [d]istrict [c]ourt's ruling that an exercise of discretion [by the Department] occurred." Brief for appellant at 9. IBP does not challenge the district court's determination that the statutes confer such discretion upon the Department. IBP simply claims the district court erred in finding the Department exercised that discretion. Therefore, IBP asserts that given that discretion, the district court should have remanded this case to the Department with instructions to reconsider the assessment of interest.

A review of IBP's second and third assignments of error necessarily involves a consideration of the State's cross-appeal. In that cross-appeal, the State argues that although the district court

reached the correct result, it erred in its determination that the Department had discretion to waive the assessment of interest. We will therefore consider IBP's second and third assignments of error and the State's cross-appeal collectively.

In support of its cross-appeal, the State directs us to § 77-2711(11), which provides that "[t]he Tax Commissioner in his or her discretion may waive all or part of any penalties provided by the provisions of such act, but may not waive the minimum interest on delinquent taxes . . . except interest on use taxes voluntarily reported by an individual."

Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004). Section 77-2711(11) plainly and unambiguously provides that the Department "may not waive the minimum interest on delinquent taxes." A delinquent tax is defined as "[a] tax not paid when due." Black's Law Dictionary 1496 (8th ed. 2004). The use tax owed by IBP was not paid when due, and thus was delinquent. Under the plain terms of § 77-2711(11), the Department was precluded from waiving the assessment of interest. Furthermore, the one exception, "interest on use taxes voluntarily reported," does not apply in this case. IBP's use tax was not "voluntarily reported," but assessed after an audit which resulted in a deficiency determination.

We therefore agree with the State on its cross-appeal and conclude that the district court erred in finding the Department had the discretion to waive the assessment of interest. Although we disagree with the district court's reasoning, where the record demonstrates that the decision of the trial court is ultimately correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate court will affirm. See *Semler v. Sears, Roebuck & Co.*, 268 Neb. 857, 689 N.W.2d 327 (2004).

Given our determination that the Department lacked discretion with regard to the waiving of interest, we need not further consider IBP's second and third assignments of error.

In its fourth and final assignment of error, IBP argues that the district court should have remanded this case in order for the

Commissioner to determine the nature of a purported compromise agreement claimed to have been entered into between the Department and IBP regarding the audit. The district court, upon its de novo review of the record of the agency pursuant to Neb. Rev. Stat. § 84-917(5)(a) (Reissue 1999), found there was no evidence in the record made at the Department's hearing to support the existence of such compromise.

IBP directs this court to a portion of the record made at the Department's hearing which it contends is "some evidence in the record of the compromise between the Department and IBP and its intent," reply brief for appellant at 7, and further argues that the

> evidence is sufficient to establish that the trial court should have remanded this case for a hearing on the nature of the compromise once [it] determined that the [Department] had committed an error of law with respect to position [sic] that it lacked any authority to correct the interest computation error.

*Id.*

IBP contends that the following argument made by its "tax manager" on behalf of IBP at the Department's hearing supports its claim:

> Well, with respect to our vigilance to — I'll say these weren't taxes that were overlooked in the sense that they were lying there ready for us to report. These things were things that a team of examiners spent months beating the bushes and looking to make arguments to say why this thing ought to be taxed when it otherwise wasn't taxed.
>
> So we conceded those things in the spirit of cooperation and were not thinking that we're going — and while there was some merit to it, weren't ready to fight tooth and nail for every nickel. And nevertheless, we feel like we've — we're being punished now for agreeing to something that maybe on hindsight and maybe in the future we'll be more vigilant before we'll concede any points with the revenue department with respect to overlooking anything.
>
> And that's not the intent. The intent here was if it's refundable, let's go ahead and let's get this thing wrapped up and moved on. We don't want to dwell on whether or

not this item or that item is subject to tax and we just disregarded the — a whole area.

We are unable to conclude that the above-quoted colloquy supports IBP's contention. At best, this colloquy implies a "compromise" as to what would be subject to use tax, not what would be subject to an interest assessment. We conclude that the district court's finding that the record failed to support the existence of a "compromise" agreement entered into between IBP and the Department regarding the assessment of interest on delinquent use tax is supported by competent evidence and is neither arbitrary, capricious, or unreasonable. IBP's fourth assignment of error is without merit.

## CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.