758 N.W.2d 395 (2008)
276 Neb. 886
Jeremiah C. JOHNSON, appellee,
v.
Beverly NETH, director, Department of Motor Vehicles of the State of Nebraska, appellant.
No. S-07-530.
Supreme Court of Nebraska.
December 12, 2008.
*396 Jon Bruning, Attorney General, and Milissa Johnson-Wiles for appellant.
Greg C. Harris, Kearney, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

NATURE OF CASE
The director of the Nebraska Department of Motor Vehicles (DMV) appeals from the judgment of the Buffalo County District Court which vacated the director's order revoking the driver's license of Jeremiah *397 C. Johnson. The court found that because the notary failed to insert the name of the acknowledging party in the attestation clause on the sworn report, the DMV did not have jurisdiction to proceed with the administrative license revocation procedures. We affirm.

SCOPE OF REVIEW
Whether the sworn report of a law enforcement officer is sufficient to confer jurisdiction on the DMV is a question of law, and an appellate court reaches a conclusion independent of that reached by the lower court. Moyer v. Nebraska Dept. of Motor Vehicles, 275 Neb. 688, 747 N.W.2d 924 (2008).

FACTS
On December 17, 2006, Johnson was stopped by Sgt. Colin Wilke, a police officer with the Kearney Police Department, after Johnson made an improper U-turn. Upon contacting Johnson, Wilke noticed that the odor of an alcoholic beverage was coming from the vehicle and that Johnson's eyes were glassy and watery. Wilke asked Johnson to submit to field sobriety tests. While Wilke was explaining the "one-leg stand," Johnson repeatedly picked up his foot, even after Wilke told him to wait for the explanation. On the nine-step, heel-to-toe test, Johnson took nine steps in each direction, but Wilke said Johnson did not turn as asked and did not touch heel-to-toe at least two or three times. Johnson was able to correctly recite the alphabet.
Based on Johnson's driving, the appearance of his eyes, the field sobriety tests, and the odor of alcohol, Wilke asked Johnson to submit to a preliminary breath test and explained that if Johnson refused, he would be arrested. Johnson refused. Wilke arrested Johnson, read the postarrest chemical advisement form, and asked him to submit to a blood test. Wilke explained that refusal to submit to a blood test would result in a separate charge. Johnson indicated that he understood, and he refused to submit to the test. Wilke took Johnson to jail.
Wilke completed a "Notice/Sworn Report/Temporary License" (sworn report). He testified that he signed it in the presence of a notary. The notary placed her seal on the original. Wilke read the verbal notice of revocation to Johnson and placed a copy of the sworn report with Johnson's property at the jail. The sworn report was received by the DMV within the 10-day statutory timeframe.
Johnson filed a petition for an administrative hearing, at which hearing the sworn report was received into evidence. It indicates that Johnson was arrested because he made an improper U-turn, smelled of alcoholic beverage, failed field sobriety tests, and refused preliminary breath and blood tests. The form also indicates that Johnson refused to submit to a chemical test and was read the verbal notice of revocation. The attestation block states:
 This foregoing instrument was acknowledged before me
 this 17 day of Dec , 2006 by
 -----------------------------------------------------
 Peace Officer name and badge number
 -----------------------------------------------------
 Peace Officer name and badge number
 NOTARY PUBLIC'S SIGNATURE /s/ Robbi L. DeWeese 
*398 The notary seal is stamped beneath the signature and states that her commission expires October 20, 2008.
The hearing officer recommended that the director revoke Johnson's driver's license for the statutory period. The director adopted the recommendation and ordered Johnson's license revoked for 1 year, effective January 16, 2007.
Johnson appealed from the order of revocation to the Buffalo County District Court. He alleged that the officer lacked probable cause to require him to submit to a chemical test or to arrest him. Johnson also alleged that the sworn report was not completed in conformity with the statutory laws applicable to notarized documents.
During the administrative hearing, the DMV offered the testimony of Wilke, the arresting officer, who testified that he was physically in the presence of the notary when he signed the sworn report. The district court found that although Wilke stated that the notary acknowledged his signature, the notary made no specific reference to the person who appeared before her. The court concluded that without the testimony of the notary, the State was, in effect, offering evidence that allowed Wilke to serve as his own notary. "It is the officer testifying as to the acts and intents of the notary and not the notary." It found that the failure to properly complete the notary requirements was not a minor error. The court vacated the director's order revoking Johnson's driving privileges, and the director appeals.

ASSIGNMENT OF ERROR
The director assigns as error the district court's vacating the order revoking Johnson's driving privileges.

ANALYSIS
The issue is whether the sworn report was properly acknowledged, because the notary did not insert the acknowledging party's name in the attestation clause.
A sworn report must be forwarded to the director by the arresting officer if a person who has consented to chemical testing is found to be under the influence of alcohol or if a person refuses to consent to chemical testing. See Neb.Rev.Stat. § 60-498.01 (Reissue 2004). The sworn report must state that the person was arrested pursuant to Neb.Rev.Stat. § 60-6,197(2) (Reissue 2004) and the reason for the arrest, that the person was requested to submit to the required test, and either that the person submitted to the required test and the results of the test or that the person refused to submit to the required test. See § 60-498.01.
In an administrative license revocation proceeding, the sworn report of the arresting officer must, at a minimum, contain the information specified in the applicable statute, in order to confer jurisdiction. Hahn v. Neth, 270 Neb. 164, 699 N.W.2d 32 (2005). Johnson argued, and the district court agreed, that the report was not properly sworn because it did not state that Wilke had acknowledged it before the notary.
Sworn reports in administrative license revocation proceedings are, by definition, affidavits. Moyer v. Nebraska Dept. of Motor Vehicles, 275 Neb. 688, 747 N.W.2d 924 (2008). An affidavit is a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it. Id. An affidavit must bear on its face, by the certificate of the officer before whom it is taken, evidence that it was duly sworn to by the party making the same. Id. However, an affidavit does not require a notary to confirm the truth of the facts stated in the affidavit; rather, the certificate, also known as a jurat, confirms only *399 that the affiant appeared before the notary, attested to the truth of his or her statements, and signed the affidavit. Id. See, also, In re Interest of Fedalina G., 272 Neb. 314, 721 N.W.2d 638 (2006). The certification of a notary public's official duties, over his or her signature and official seal, is received by the courts as presumptive evidence of the facts certified therein. Hass v. Neth, 265 Neb. 321, 657 N.W.2d 11 (2003). See, also, Neb.Rev. Stat. § 64-107 (Reissue 2003).
In Moyer, supra, the district court determined that the "sworn report" was never sworn because the notary did not place the arresting officer under oath. This court held that the signature of the arresting officer and the notarization of the signature were sufficient to make the sworn report valid. We noted that the arresting officer signed the report and testified it was signed in the presence of a notary and that the report was notarized.
No other action was required by either [the arresting officer] or the notary. The notary was not required to confirm the truth of the statements; the very fact that [the arresting officer] signed the report in the presence of a notary and that her signature was in fact notarized was sufficient as an oath or affirmation.
Moyer v. Nebraska Dept. of Motor Vehicles, 275 Neb. at 692, 747 N.W.2d at 927.
The case at bar presents a different question: Did the failure to include the name of Wilke as the acknowledging party invalidate the sworn report? We conclude that it did. Wilke signed the report, as did the notary. The notary affixed a stamp indicating her name and the expiration date of her commission. She indicated that the "foregoing instrument was acknowledged before me this 17 day of Dec, 2006 by." Between the acknowledgment phrase and the notary's signature are two lines which are labeled "Peace Officer name and badge number." These lines are blank.
A sworn report that fails to fully comply with the requirements of the administrative license revocation statutes does not confer jurisdiction upon the director to revoke a motorist's license. See Hahn v. Neth, 270 Neb. 164, 699 N.W.2d 32 (2005). There, the arresting officer did not check the box stating that the driver was requested to submit to the required test and we found that the report did not comply with the requirements of Neb.Rev. Stat. § 60-6,205(3) (Cum. Supp. 2002) (now at § 60-498.01). In considering at what point an omission on a sworn report becomes a jurisdictional defect, as opposed to a technical one, we concluded that "the test should be whether, notwithstanding the omission, the sworn report conveys the information required by the applicable statute." Hahn v. Neth, 270 Neb. at 171, 699 N.W.2d at 38. Therefore, the sworn report must, at a minimum, contain the information specified in the applicable statute in order to confer jurisdiction. "The statutory requirements are not onerous; an arresting officer need only complete a form designed to convey the required information and swear to the information thus conveyed." Id.
In this case, the attestation clause is not complete because there is no name listed in the acknowledgment. Statutes governing acknowledgments provide that the person taking an acknowledgment shall certify that
(1) [t]he person acknowledging appeared before him and acknowledged he executed the instrument; and
(2) [t]he person acknowledging was known to the person taking the acknowledgment or that the person taking the acknowledgment had satisfactory evidence *400 that the person acknowledging was the person described in and who executed the instrument.
Neb.Rev.Stat. § 64-203 (Reissue 2003).
The form of a certificate of acknowledgment used by a notary is recognized in Nebraska if the certificate is in a form prescribed by the laws of this state or of the place in which the acknowledgment is taken, or the certificate contains the words "acknowledged before me," or their substantial equivalent. Neb.Rev.Stat. § 64-204 (Reissue 2003). The words "acknowledged before me" mean that the person acknowledging appeared before the person taking the acknowledgment, that he or she acknowledged he or she executed the instrument, that the instrument was executed for the purposes stated in the instrument, and that the person taking the acknowledgment either knew or had satisfactory evidence that the person acknowledging was the person named in the instrument or certificate. Neb.Rev.Stat. § 64-205 (Reissue 2003).
State law also prescribes the forms to be used for acknowledgment in Neb.Rev.Stat. § 64-206 (Reissue 2003). An acknowledgment completed by a public officer should state:
State of____
County of____
The foregoing instrument was acknowledged before me this (date) by (name and title of position).
(Signature of Person Taking Acknowledgment)
(Title or Rank)
(Serial Number, if any)
This court has not previously addressed the requirements for proper acknowledgment of a signature. The U.S. Court of Appeals for the Sixth Circuit held that an acknowledgment for a deed of trust was invalid because the bankruptcy debtors' names were omitted from the notarization section. In re Biggs, 377 F.3d 515 (6th Cir.2004). The In re Biggs court cited In re Crim, 81 S.W.3d 764 (Tenn.2002), a Tennessee case in which a wife attempted to sign a deed of trust on behalf of her husband using a power of attorney. There, the notary used an acknowledgment form indicating that both the husband and the wife had personally appeared before him and that the notary had acknowledged their signatures. In re Crim, supra. The Tennessee Supreme Court found that because the notary did not use the prescribed statutory form, the certificate of acknowledgment did not comply with state law. Id.
The In re Biggs court stated that the omission of the names in the acknowledgment form placed in doubt the integrity of the acknowledgment. "[W]ho, if anyone, is doing the acknowledging? Failing to name the individuals who signed the deed of trust bears directly on the ability of a subsequent purchaser of real property to verify that the instrument was signed by the true property owners." In re Biggs, 377 F.3d at 519. The acknowledgment did not comply with Tennessee law. "The `substantial compliance' test `addresses the unintentional omission of words by the officer taking an acknowledgment,' [citation omitted], not the unintentional omission of the names of the acknowledging individuals." Id. (emphasis in original).
The argument was made that the names of the individuals were included in the deed of trust, which should satisfy the requirement of including the names in the acknowledgment. The Court of Appeals disagreed, finding that allowing such omission would eliminate the acknowledgment requirement.
No one doubts that the names of the individuals on the deed of trust are the names of the individuals who should appear *401 on the acknowledgment. The very point of the acknowledgment is to have their signatures confirmed in the presence of a notary. When notaries, however, merely take pre-printed forms and purport to notarize them without stating whose signatures they have notarized and who, if anyone, appeared before them, they not only undermine the Tennessee legislature's salutary purpose in creating statutorily-approved forms but also fail to accomplish the signal reason for having an acknowledgment in the first place.
In re Biggs, 377 F.3d at 520 (emphasis in original).
Recognizing the presumption that a sworn public official has acted lawfully, the Sixth Circuit determined that the presumption applies "when notaries perform the core functions of their job, not when they fail to perform them." Id. The court held that the deed of trust could be voided because the acknowledgment was not valid.
Whether the sworn report of a law enforcement officer is sufficient to confer jurisdiction on the DMV is a question of law, and an appellate court reaches a conclusion independent of that reached by the lower court. Moyer v. Nebraska Dept. of Motor Vehicles, 275 Neb. 688, 747 N.W.2d 924 (2008). As noted earlier, a sworn report in an administrative license revocation proceeding is, by definition, an affidavit, which must bear on its face, by the certificate of the officer before whom it is taken, evidence that it was duly sworn to by the party making the same. See id. The report in this case does not show that it was sworn to by the law enforcement officer.
We conclude that the acknowledgment on the sworn report, which did not set forth the name of the individual making the acknowledgment, i.e., the arresting officer, did not substantially comply with the requirements of Nebraska law, and therefore, the acknowledgment was fatally defective. Because the report was not properly acknowledged, it is not a sworn report as required by statute. Thus, the DMV has not made a prima facie case for license revocation.

CONCLUSION
For the reasons set forth herein, we affirm the judgment of the district court.
AFFIRMED.
CONNOLLY, J., concurring.
We have yet another case requiring us to clarify what constitutes a valid sworn report. Under Neb.Rev.Stat. § 60-498.01 (Reissue 2004), once an officer timely submits a sworn report, the DMV has established a prima facie case for revoking a driver's license.[1] In Hahn v. Neth,[2] we discussed cases holding that a completed but unsworn statement is a jurisdictional defect. We explained these courts' reasoning as follows:
[W]here revocation was automatic upon receipt of a sworn report if the licensee did not request a hearing, the requirement that the report be "sworn" was essential to the legislative purpose of providing a reliable basis for administrative action and was therefore mandatory.... "By requiring a sworn report, the [legislative body] affords some measure of reliability and protection to a licensee, and the director's ignoring this *402 mandate thwarts this protection. The sworn report, therefore, is essential to the validity of the director's subsequent actions. If the director does not receive a sworn report, his subsequent actions are void."[3]
We recently emphasized the above reasoning in Arndt v. Department of Motor Vehicles.[4] Finally, in Hass v. Neth,[5] we held that the sworn statement, as an affidavit, must show on its face evidence that it was duly sworn to by the officer making the report.
These statements clearly put the DMV on notice that a proper certification, as an essential component of the arresting officer's sworn report, is a jurisdictional requisite in an administrative law review proceeding. And we have stated more than once that because of the significant procedural benefit the Legislature has conferred on the DMV under § 60-498.01, we require strict compliance with the applicable rules and regulations.[6] Thus, the certification is subject to strict compliance because the sworn statement is the only procedural protection afforded to a driver that a proper basis exists for the revocation. The multitude of appeals that have arisen regarding sworn reports have proved the necessity of a strict compliance rule.[7] And yet four more cases related to certification await the Court of Appeals.[8] The DMV's repeated failure to comply with the requirements of a sworn report is a source of both frustration and wonder. The requirements are not an onerous burden, given the benefit the DMV receives in establishing its prima facie case by simply complying with this requirement. In golf parlance, the sworn report is a "gimme."
Furthermore, I do not believe this court should tortuously characterize material omissions in a certificate of acknowledgment as a technical defect. Such reasoning could have unintended consequences in other areas of law. Under the "law of unintended consequences," if this court were to conclude that the certification here was sufficient under a rule of strict compliance, it would be hard to conclude that a material omission in other types of sworn instruments was a fatal defect. Nor do I believe that our case law in other contexts supports the dissent's position that the omission of the acknowledger's name is a technical defect.
It is true that a notary's certification accompanied by the notary's signature and official seal is presumptive evidence of the facts stated in the certification.[9] But there is a critical difference between presuming that a notary took an acknowledgment *403 from the person whose name is stated on the certification and supplying by presumption essential statutory requisites omitted in the certification.[10] Other courts have explicitly held that the identity of the party making the acknowledgment is an essential element that must appear in the certificate.[11] We have implicitly held the same.
McMaster v. Wilkinson[12] is illuminating. There, an election result was contested, and some issues involved the validity of absentee ballots. The law required the ballots to be sealed in an envelope bearing voter information, including the voter's name and the notary public's certificate of acknowledgment. For one ballot, the notary signed the envelope attesting that the voter had signed and sworn to its execution in his presence. But the notary failed to identify the voter in the appropriate certification line and failed to affix his seal and official title in that part of the certification. We held there was not substantial compliance with the law. The fact that the ballot could be identified as the voter's did not change our judgment that the ballot was properly excluded.
It is also correct that we have accepted substantial compliance with certification rules in some contexts.[13] But an acknowledgment is fatally defective if "[i]t is wanting in that which is evidently of the very essence of the statutory requirement...."[14] As the majority opinion states, under Neb.Rev.Stat. § 64-203 (Reissue 2003), certification of the acknowledger is of the very essence of the statutory requirements for a valid acknowledgment.
Before quitting the subject, I believe that the dissent's reliance on the Idaho Supreme Court case is misplaced. While that court was willing to overlook the omission of the acknowledger's name in a certificate of acknowledgment accompanying a deed,[15] clearly, not all courts agree with that position.[16] Nor does this court's case law point in that direction.[17]
More important, the reasoning of the Idaho Supreme Court does not apply here. The court concluded that the purpose of an acknowledgment accompanying a mortgage "is to provide protection against the recording of false instruments."[18] Regardless whether we agree with the Idaho Supreme Court's conclusion in a case involving the recording of deeds, the purpose *404 of the acknowledgment here is differentto ensure a proper basis for a license revocation and thereby confer jurisdiction for the DMV's action.
In sum, compliance with § 60-498.01 is not astrophysics. We should hold the DMV to strict compliance.
GERRARD and MILLER-LERMAN, JJ., join in this concurrence.
HEAVICAN, C.J., dissenting.
I respectfully dissent. The majority concludes that because the acknowledgment on the sworn report did not set forth the name of the arresting officer, such acknowledgment failed to substantially comply with Nebraska law. As such, the majority holds that the sworn report was insufficient to confer jurisdiction on the DMV. For the reasons stated in my dissent in Snyder v. Department of Motor Vehicles,[1] I do not believe the technical defect in this sworn report would divest the DMV of jurisdiction. But even assuming that a technical defect in a sworn report could prevent the DMV from revoking a license, I do not believe any defect exists in this case.
It is well established that deficiencies in the certificate of acknowledgment will not render a certificate of acknowledgment defective if the alleged deficiency can be cured by reference to the instrument itself.[2] And in this case, it is possible to determine whose signature was being acknowledged in the certificate of acknowledgment simply by reference to the remainder of the sworn report. Wilke is the only signatory to the sworn report. Wilke's printed name, badge number, signature, and address appear just above the certificate of acknowledgment on the sworn report. It is clear from a review of the sworn report that the only signature the notary could have been acknowledging was Wilke's. There is no contention that Wilke did not sign the document or that his signature was not affixed in the presence of the notary. And Wilke himself testified that he signed the document in the presence of the notary. Given this. I would conclude that the certificate of acknowledgment substantially complied with Nebraska law.
The majority's conclusion that the omission of Wilke's name was fatal to the sworn report appears to be rooted in the fear that such omission places in doubt the integrity of the notary's acknowledgment. While I agree there is case law, including that cited by the majority, which could give rise to the fears of the majority, I do not share that concern in this case.
As an initial matter, while I agree that the cases cited by the majority conclude that an omission such as the one in this case would be fatal to an instrument, I also note that these cases may be distinguishable. Both In re Biggs[3] and In re Crim[4] involved a mortgage or a deed. In such instances, because the rights of subsequent purchasers could hinge on the validity of the signatures in question, it might be of more import to have an acknowledgment more fully comply with applicable law. *405 Such concern is not present in cases involving sworn reports.
With respect to concerns about the integrity of the notarial duty, I would agree with the Idaho Supreme Court in Farm Bureau Fin. Co., Inc. v. Carney.[5] In that case, the court touched on the integrity of a notary's acknowledgment:
The sine qua non of this statutory requirement is the involvement of the notary, a public officer in a position of public trust. If the notary faithfully carries out his statutory duties, it makes little difference whether he remembers to fill in the blanks in the certificate. Similarly, if the notary conspires with a forger, or fails to require the personal appearance of the acknowledger, or is negligent in ascertaining the identity of the acknowledger, the statutory scheme is frustrated whether the form is completely filled in or not.
. . . .
... Whether the certificate blanks are empty or full is not the significant fact. The key to the statutory safeguard is the integrity of the notary in the proper discharge of notarial duties by requiring the signatories to personally appear before him and acknowledge that they did in fact execute the document.[6]
Concerns about the integrity of the notarial process could conceivably be present each time a notary acknowledges a signature. The notarial process works because we presume that the notary is fulfilling his or her notarial duties. The Farm Bureau Fin. Co., Inc. court also highlights this presumption of regularity which is afforded to the actions of public officials, including notaries, and concludes that the notary's acknowledgment was subject to such a presumption.[7] In Nebraska, like in Idaho, in the absence of evidence to the contrary, it may be presumed that public officers faithfully perform their official duties and that absent evidence showing misconduct or disregard of law, the regularity of official acts is also presumed.[8] As discussed above, there is no evidence showing that Wilke did not sign the document in the presence of the notary. There is simply no showing of any misconduct or disregard of law with respect to the notary's actions.
For the above reasons I would conclude that the certificate of acknowledgment in this case substantially complies with Nebraska law and would apply the presumption of regularity to the actions of the notary. As such, I would find that the omission of Wilke's name from the certificate of acknowledgment was not fatal to the sworn report in this case. I would therefore reverse the decision of the district court and uphold the DMV's revocation of Johnson's driver's license.
NOTES
[1] See McPherrin v. Conrad, 248 Neb. 561, 537 N.W.2d 498 (1995), disapproved on other grounds, Hahn v. Neth, 270 Neb. 164, 699 N.W.2d 32 (2005).
[2] Hahn, supra note 1.
[3] Id. at 170, 699 N.W.2d at 37-38 (citations omitted).
[4] Arndt v. Department of Motor Vehicles, 270 Neb. 172, 699 N.W.2d 39 (2005).
[5] Hass v. Neth, 265 Neb. 321, 657 N.W.2d 11 (2003).
[6] See Hahn, supra note 1, quoting Morrissey v. Department of Motor Vehicles, 264 Neb. 456, 647 N.W.2d 644 (2002), disapproved on other grounds, Hahn, supra note 1.
[7] See, e.g., Moyer v. Nebraska Dept. of Motor Vehicles, 275 Neb. 688, 747 N.W.2d 924 (2008); Hass, supra note 5; Stoetzel v. Neth, 16 Neb.App. 348, 744 N.W.2d 465 (2008); Thomsen v. Nebraska Dept. of Motor Vehicles, 16 Neb.App. 44, 741 N.W.2d 682 (2007); Forgey v. Nebraska Dept. of Motor Vehicles, 15 Neb.App. 191, 724 N.W.2d 828 (2006); Valeriano-Cruz v. Neth, 14 Neb.App. 855, 716 N.W.2d 765 (2006).
[8] See, Armstrong v. Neth, case No. A-07-531; Hubbard v. Neth, case No. A-07-787; Brown v. Department of Motor Vehicles, case No. A-08-133; and Downing v. Neth, case No. A-08-351.
[9] See, Neb.Rev.Stat. § 64-107 (Reissue 2003); Moyer, supra note 7; Smith v. Johnson, 43 Neb. 754, 62 N.W. 217 (1895).
[10] See, Keeling v. Hoyt, 31 Neb. 453, 48 N.W. 66 (1891); Becker v. Anderson, 11 Neb. 493, 9 N.W. 640 (1881); Dorsey v. Brunswick Corp., 69 Wash.2d 511, 418 P.2d 732 (1966); 1 Am.Jur.2d Acknowledgments § 33 (2005).
[11] See, In re Biggs, 377 F.3d 515 (6th Cir. 2004); In re Order of Sammons, Co. Superintendent of Schools, 242 Minn. 345, 65 N.W.2d 198 (1954); Cannon et al. v. Deming, Sheriff, et al., 3 S.D. 421, 53 N.W. 863 (1892); Goad v. Walker, 73 W.Va. 431, 80 S.E. 873 (1914).
[12] McMaster v. Wilkinson, 145 Neb. 39, 15 N.W.2d 348 (1944), overruled in part on other grounds, State ex rel. Brogan v. Boehner, 174 Neb. 689, 119 N.W.2d 147 (1963).
[13] See, e.g., Powers v. Spiedel, 84 Neb. 630, 121 N.W. 968 (1909); Buck v. Gage, 27 Neb. 306, 43 N.W. 110 (1889).
[14] Spitznagle v. Vanhessch, 13 Neb. 338, 340, 14 N.W. 417, 417-18 (1882).
[15] See Farm Bureau Fin. Co., Inc. v. Carney, 100 Idaho 745, 605 P.2d 509 (1980).
[16] See, In re Biggs, supra note 11; Seale Motor Co. Inc. v. Stone, 218 S.C. 373, 62 S.E.2d 824 (1950); Dorsey, supra note 10.
[17] See, McMaster, supra note 12; Dawson County State Bank v. Durland, 114 Neb. 605, 209 N.W. 243 (1926); Keeling, supra note 10; Spitznagle, supra note 14.
[18] See Carney, supra note 15, 100 Idaho at 750, 605 P.2d at 514.
[1] Snyder v. Department of Motor Vehicles, 274 Neb. 168, 736 N.W.2d 731 (2007).
[2] See, e.g., Farm Bureau Fin. Co., Inc. v. Carney, 100 Idaho 745, 605 P.2d 509 (1980); Gardner v. Incorporated City of McAlester, 198 Okla. 547, 179 P.2d 894 (1946); Coates v. Smith, 81 Or. 556, 160 P. 517 (1916); Milner v. Nelson, 86 Iowa 452, 53 N.W. 405 (Iowa 1892). See, also, 1A C.J.S. Acknowledgments § 59 (2005); 1 Am.Jur.2d Acknowledgments § 49 (2005).
[3] In re Biggs, 377 F.3d 515 (6th Cir.2004).
[4] In re Crim, 81 S.W.3d 764 (Tenn.2002).
[5] Farm Bureau Fin. Co. v. Carney, supra note 2.
[6] Id. at 750, 605 P.2d at 514.
[7] See id.
[8] State v. Gales, 269 Neb. 443, 694 N.W.2d 124 (2005).