Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/23/2018 08:12 AM CDT

In re Estate of Susan A. Loftus.
Angela Loftus, Personal Representative of
the Estate of Susan A. Loftus, deceased,
appellee, v. Daniel Loftus, Jr., and
Teri Loftus McClun, appellants.

___ N.W.2d ___

Filed October 23, 2018.    No. A-17-1111.

1. **Decedents' Estates: Appeal and Error.** An appellate court reviews probate cases for error appearing on the record made in the county court.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. ____: ____. An appellate court, in reviewing a judgment for errors appearing on the record, will not substitute its factual findings for those of the trial court when competent evidence supports those findings.
4. **Wills.** The requirements of Neb. Rev. Stat. § 30-2327 (Reissue 2016) are satisfied if a will is (1) in writing, (2) signed by the testator, and (3) signed by at least two individuals, each of whom witnessed either the signing or the testator's acknowledgment of the signing of the will.
5. **Statutes: Appeal and Error.** The language of a statute is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
6. ____: ____. Absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning.
7. **Statutes: Wills.** Statutory provisions regarding the manner in which wills must be executed are mandatory and subject to strict construction.
8. **Wills: Witnesses.** The attestation required of witnesses to a will consists of their seeing that those things exist and are done which the law requires to exist or to be done in order to make the instrument, in law, the will of the testator.

9. **Statutes: Wills: Words and Phrases.** Due execution of a will means compliance with the formalities required by the statute in order to make the instrument the will of the testator.
10. **Evidence.** Habit evidence makes it more probable that the person acted in a manner consistent with that habit.
11. **Evidence: Proof.** Evidence of habit may be the only vehicle available to prove that someone acted in a particular way on a particular occasion, and the lack of detail or specificity goes to the weight and credibility to be placed on the testimony by the factfinder.
12. **Witnesses: Testimony.** The credibility of a witness is a question for the trier of fact, and it is within its province to credit the whole of the witness' testimony, or any part of it, which seemed to it to be convincing, and reject so much of it as in its judgment is not entitled to credit.

Appeal from the County Court for Sarpy County: Robert C. Wester, Judge. Affirmed.

Bradley A. Boyum, of Boyum Law Firm, for appellants.

Dean J. Jungers for appellee.

Pirtle, Riedmann, and Welch, Judges.

Riedmann, Judge.

## INTRODUCTION

The appellants, Daniel Loftus, Jr., and Teri Loftus McClun (Teri), appeal the order of the county court for Sarpy County which admitted the last will and testament of Susan A. Loftus to formal probate. On appeal, the appellants argue that the will was not properly acknowledged and, therefore, was not valid. Finding no merit to this argument, we affirm.

## BACKGROUND

Susan died in April 2017. A document purported to be her last will and testament was thereafter presented to the county court for formal probate, and the appellants filed an objection to the admission of the will. A hearing on the matter was held on August 28, 2017.

The purported will was received into evidence at the hearing. The three-page document displays Susan's signature on the last page and the signature of Ruth Welstead as a witness.

Welstead testified at the hearing that Susan asked her if she would be a witness to Susan's last will and testament and that she agreed to do so. Welstead observed Susan sign the will, and then Welstead signed it.

The document also bears the signature and notary stamp of Allen Guidry, although it is undisputed that there is an error in the manner in which the notary statement was completed. Guidry was working at a bank at the time he signed the will, and he testified at the hearing that he did not specifically remember Susan's will, but was confident the signature on the document was his signature. He explained that generally when someone came into the bank and presented him a document that had already been signed, he would ask for identification if he did not recognize the person as a bank customer; however, if he did recognize the person, he would ask him or her to verify that it was his or her signature on the document. He recalled that Susan was a customer of the bank, and thus, if she had come into the bank with the document presigned, he would not have asked her for identification; but, rather, his normal practice would be to ask her to acknowledge her signature on the document.

In a written order, the county court noted that Guidry had testified as to his practice of always asking for identification unless he knew the signatory and always asking if the person acknowledged signing the document in question if it had been presigned. The court therefore found Guidry's testimony sufficient to establish that he required the acknowledgment of Susan's signature before he signed the document. As a result, the court concluded that Susan's will had been validly executed and admitted it to formal probate, determined the heirs, and appointed a personal representative for the estate. The appellants timely appeal to this court.

## ASSIGNMENT OF ERROR

The appellants assign, summarized, that the county court erred in finding that Susan's signature on her will was properly acknowledged.

## STANDARD OF REVIEW

[1-3] An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Pluhacek*, 296 Neb. 528, 894 N.W.2d 325 (2017). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Estate of Forgey*, 298 Neb. 865, 906 N.W.2d 618 (2018). An appellate court, in reviewing a judgment for errors appearing on the record, will not substitute its factual findings for those of the trial court when competent evidence supports those findings. *Id*.

## ANALYSIS

The appellants argue that the county court erred in determining that Susan's will was properly acknowledged. We disagree.

[4] Except as provided for holographic wills, writings within Neb. Rev. Stat. § 30-2338 (Reissue 2016), and wills within Neb. Rev. Stat. § 30-2331 (Reissue 2016), every will is required to be in writing signed by the testator or in the testator's name by some other individual in the testator's presence and by his direction, and is required to be signed by at least two individuals each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will. Neb. Rev. Stat. § 30-2327 (Reissue 2016). When the requirements of § 30-2327 are met, the will is validly executed. *In re Estate of Pluhacek, supra*. The requirements of § 30-2327 are satisfied if a will is (1) in writing, (2) signed by the testator, and (3) signed by at least two individuals, each of whom witnessed either the signing or the testator's acknowledgment of the signing of the will. *In re Estate of Pluhacek, supra*.

There is no dispute in the present case that Susan's will was in writing and signed by her, and Susan's signature was witnessed by Welstead, who also signed the will. Thus, the parties agree that the relevant question is whether there is sufficient evidence to establish that Guidry witnessed Susan's

acknowledgment of her signature so as to satisfy the third requirement of § 30-2327.

The appellants rely upon Neb. Rev. Stat. § 64-203 (Reissue 2009) and *Johnson v. Neth*, 276 Neb. 886, 758 N.W.2d 395 (2008), to argue that the laws governing acknowledgments require a notary public to identify the acknowledging party in the notary statement. They claim that Guidry did not do so and that there was no evidence that it was Susan herself who presented the will to Guidry for his signature. Thus, in their opinion, the acknowledgment was improper and the will was not valid. Contrary to the appellants' argument, however, § 64-203 and *Johnson v. Neth, supra*, do not govern this case, because there is no requirement that a testator's signature on a will be acknowledged by a notary public except in the context of self-proved wills. See Neb. Rev. Stat. § 30-2329 (Reissue 2016).

[5,6] The language of a statute is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Johnson v. City of Fremont*, 287 Neb. 960, 845 N.W.2d 279 (2014). In other words, absent anything to the contrary, an appellate court will give statutory language its plain and ordinary meaning. *Id*.

[7-9] Under § 30-2327, a will must be signed by two witnesses, each of whom witnessed either the signing or the testator's acknowledgment of the signing or of the will. Statutory provisions regarding the manner in which wills must be executed are mandatory and subject to strict construction. *In re Estate of Mecello*, 262 Neb. 493, 633 N.W.2d 892 (2001). The attestation required of witnesses to a will consists of their seeing that those things exist and are done which the law requires to exist or to be done in order to make the instrument, in law, the will of the testator. *Id*. Due execution of a will means compliance with the formalities required by the statute in order to make the instrument the will of the testator. *Id*. Contrary to the sworn report required under the facts of *Johnson v. Neth,*

*supra*, there is no requirement in § 30-2327 that the acknowledgment of a testator's signature on a will be duly sworn or confirmed by oath or affirmation. Rather, the two witnesses must witness either the signing of the will or the testator's acknowledgment of the signature.

Moreover, the language of § 30-2327 is based upon Unif. Probate Code § 2-502, 8 (part I) U.L.A. 209 (2013). See *In re Estate of Odenreider*, 286 Neb. 480, 837 N.W.2d 756 (2013) (chapter 30 of Nebraska Revised Statutes is based upon Uniform Probate Code). Except, § 2-502 allows an additional manner in which to acknowledge a will. Under § 2-502(a)(3), a will must be either

> (A) signed by at least two individuals, each of whom signed within a reasonable time after the individual witnessed either the signing of the will . . . or the testator's acknowledgment of that signature or acknowledgment of the will; or
>
> (B) *acknowledged by the testator before a notary public or other individual authorized by law to take acknowledgments.*

(Emphasis supplied.) The official comments to § 2-502 note that subparagraph (B) was added in 2008 in order to recognize the validity of notarized wills. Thus, pursuant to the plain language of subparagraph (A), which is also contained in § 30-2327, there is no requirement that one of the witnesses is a notary public. Therefore, Guidry's failure to specifically identify Susan in the notary statement is not fatal to the validity of the will because no notary statement was required. However, there must have been sufficient evidence presented to establish that Guidry witnessed Susan's acknowledgment that she had, in fact, signed the will.

Guidry testified that he did not specifically recall signing Susan's will, but was confident the signature on the document was his signature. He then explained that he recognized Susan as a customer of the bank and that therefore, his routine practice when notarizing a document for someone he recognized was to

sign it without asking for identification to verify the person's identity. He explained his general practice, however, was that he would not have notarized an unsigned document and that if the document was presigned, his habit was to ask the person to acknowledge his or her signature on the document.

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. Neb. Rev. Stat. § 27-406(1) (Reissue 2016).

The Nebraska appellate courts have previously allowed testimony by professionals as to their habits in order to prove conformity on a particular occasion. In *Hoffart v. Hodge*, 9 Neb. App. 161, 609 N.W.2d 397 (2000), this court upheld the admission of the testimony of a defendant medical doctor in a medical malpractice action as to his regular practice and routine of advising his patients. In doing so, we recognized the practical reality that a doctor cannot be expected to specifically recall the advice or explanation he or she gives to each and every patient he or she treats. Thus, evidence of habit may be the only vehicle available for a doctor to prove that he or she acted in a particular way on a particular occasion. *Id.*

Relying upon the rationale of *Hoffart v. Hodge, supra*, the Nebraska Supreme Court allowed the testimony of a lawyer in a legal malpractice case regarding the advice he routinely gave to his clients under particular circumstances. See *Borley Storage & Transfer Co. v. Whitted*, 271 Neb. 84, 710 N.W.2d 71 (2006).

In a matter similar to the facts of the instant case, the Court of Appeals of Indiana permitted the testimony of a lawyer's habit and routine practice in a will contest. In *Fitch v. Maesch*, 690 N.E.2d 350 (Ind. App. 1998), a testator executed her will, and the execution was witnessed by her neighbor and her lawyer. After the testator's death, her brother objected to the admission of the will to probate.

Indiana law, similar to that of Nebraska, requires that a will be signed by the testator and at least two witnesses, mandating that the testator sign the will in the presence of the witnesses and that the attesting witnesses sign in the presence of the testator and each other. See Ind. Code Ann. § 29-1-5-3 (LexisNexis Cum. Supp. 2009). At trial in the matter, the lawyer's secretary testified as to the lawyer's habit in supervising the execution of wills, and on appeal, the court found that such testimony was relevant and admissible to show that the lawyer supervised the execution of the will in that particular case in conformity with that habit. And the evidence regarding his habit demonstrated that his habit was to have a will executed as recited in the attestation clause.

[10,11] Likewise in the present case, Guidry's testimony as to his routine practice of signing documents for bank customers tends to establish how he acted when signing Susan's will. Habit evidence makes it more probable that the person acted in a manner consistent with that habit. See *Hoffart v. Hodge, supra*. Like the professionals in *Hoffart v. Hodge* and *Borley Storage & Transfer Co. v. Whitted*, Guidry explained that he signed approximately 250 documents since the time he signed Susan's will and could not specifically remember that instance. Thus, evidence of habit may be the only vehicle available to prove that someone acted in a particular way on a particular occasion, see *Hoffart v. Hodge, supra*, and the lack of detail or specificity goes to the weight and credibility to be placed on the testimony by the factfinder, see *Borley Storage & Transfer Co. v. Whitted, supra*.

The appellants assert that there is no evidence that Susan personally presented her will to Guidry for his signature. However, Guidry's testimony established that had someone he did not recognize presented Susan's will to him, he would have asked that person for identification before signing the will and would not have signed the document without seeing identification matching the signature on the document. Thus, it can be inferred that because Guidry signed the will, it was Susan who presented the document to him.

[12] The county court found that Guidry's testimony as to his routine practice was sufficient to establish that he required that Susan acknowledge her signature on her will before Guidry signed it. The appellants argue that the court relied on a single statement from Guidry's testimony regarding his procedures and that had the court considered the entirety of the testimony, it would be clear that Guidry was unfamiliar with the proper procedures for notarizing a document. We again note that the will was not required to be notarized, but, rather, Guidry was required to sign the will after acknowledging Susan's signature. The credibility of a witness is a question for the trier of fact, and it is within its province to credit the whole of the witness' testimony, or any part of it, which seemed to it to be convincing, and reject so much of it as in its judgment is not entitled to credit. *Fredericks Peebles v. Assam*, 300 Neb. 670, 915 N.W.2d 770 (2018). Accordingly, the county court, as the factfinder, was permitted to accept Guidry's testimony as to his routine practice and habit in order to find the evidence sufficient to conclude that he acted accordingly when signing Susan's will.

An appellate court, in reviewing a judgment for errors appearing on the record, will not substitute its factual findings for those of the trial court when competent evidence supports those findings. *In re Estate of Forgey*, 298 Neb. 865, 905 N.W.2d 618 (2018). The record supports the county court's conclusion. We therefore find that the evidence was sufficient to satisfy the requirements of § 30-2327. Accordingly, the county court did not err in concluding that Susan's will had been validly executed and in admitting it to formal probate, determining her heirs, and appointing a personal representative.

## CONCLUSION

Finding no error in the county court's decision admitting the will to formal probate, we affirm.

Affirmed.